in that case the proceedings were initial, to bring the party to trial; here they are final, to secure the punishment of the offender. But the object of both was the same, leading to the same result. We are therefore of opinion that the expense which was incurred in this case was a proper charge, and within the province of the district attorney to incur, and that the same became a charge upon the county of New York, and this irrespective of the fact whether the act of 1887 authorized the governor to incur such expense or not.

So far as defendant's third point is concerned, no such question is raised upon the trial of the action. The motion for a nonsuit was upon "the ground that the facts in question do not constitute a cause of action, in that they show no liability on the part of the city of New York for the payment of the claim." The proof, as we have seen, constituted the claim a proper charge against the county of New York, which charge was, by virtue of the consolidation act, payable by the city. Laws 1882, c. 410, § 27. No change was made in the status of the county officers, and the district attorney remained a county officer, as his status was fixed by the constitution. Id.; Const. art. 10, § 1.

No claim was urged upon the trial that there was lack of appropriation to meet this expense; on the contrary, the proof upon the part of plaintiff tended to establish that a sum was appropriated to meet the deficiency that existed for the year in which this charge was created, and when this claim was rejected the reason assigned was that it was only chargeable against the state, and not against the city, and the motion was based upon this ground. So that, if we assume that this was an essential requisite, as the point was not taken, it is not available now. If we consider it as raised by the motion, then proof existed from which the court could have found that there was a fund appropriated, which was available for its payment.

Judgment should be ordered for the plaintiff upon the motion, with costs. All concur.

---

## ZIMMERMAN v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. February 19, 1897.)

1. CARRIERS—INJURY TO PASSENGER—NEGLIGENCE.
    Plaintiff was a passenger on the open rear car of a long train, the front cars of which only were equipped with vacuum brakes. The train ran past plaintiff's station, and stopped where there were no lights and no platform. As the train was stopping, a trainman, without warning them, told the passengers to hurry. As plaintiff was about to leave the car, the slack in the coupling was taken up, and there was a sudden jerk forward, which threw plaintiff to the ground. Held, that the accident was caused solely by defendant's negligence.

2. EVIDENCE—OBJECTION—AVAILABILITY.
    Error in the admission of evidence is not made available by an objection which does not specify the proper grounds for its exclusion.

3. APPEAL—MODIFICATION OF JUDGMENT—COSTS TO APPELLEE.
    Where the judgment is modified as to a matter which would have been corrected had appellant brought it to the attention of the trial court, respondent is entitled to costs of appeal.

Appeal from trial term, Kings county.

Action by Johanna Zimmerman against the Long Island Railroad Company for personal injuries. From a judgment in favor of plaintiff, and from an order denying its motion for a new trial, defendant appeals. Affirmed on condition.

Argued before CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

W. C. Beecher, for appellant.

F. E. Dana, for respondent.

BRADLEY, J. On the evening of August 22, 1891, at Manhattan Beach, the plaintiff became a passenger, destined for Parkville, upon the defendant's train of cars. When the train stopped at Parkville, the plaintiff, in proceeding to alight, fell, and received the personal injuries which constitute the subject of her claim for damages. The train was a long one, consisting of 13 loaded passenger cars. The plaintiff was in the rear car, which was an open one, with seats crosswise of it. The train did not stop at the platform of the station at Parkville, but went on beyond and west of it, crossing what is known as the "Culver Railroad." When the train was coming to a stop, the passengers were notified by some trainman on the running board of the car, who hallooed, "Hurry up!" The car stopped. The plaintiff, sitting on the outside, got up, and stepped on the running board, and then, as the evidence tends to prove, there was a sudden jerk of the car, and she fell to the ground, and received an injury. There is not much controversy in the evidence about the facts. This occurred about 10 o'clock in the evening. There was no light and no platform at that place. The running board was about 2½ feet from the ground, and below that was another step in like manner extending the length of the car. The reason given by the defendant for passing by the station platform was that there was an up grade going west until the Culver road was passed, and that, as the train was a heavy one, the engine very likely would be unable to start the train if stopped on the grade. And the reason given by the evidence on the part of the defendant for the jerk or vibration of the car after it first came to a stop was that the vacuum brake in use on the train was on only some of the cars nearest the front end of the train; that it was not practicable to apply it to the cars further in the rear; and, as the consequence, while the cars supplied with brakes were held to their places when the train stopped, and the cars had come together, those having no brake connected with them would vibrate or slack back the length of the couplings and slack up again. Those conditions very likely may have been the cause of the jerking of the car which caused the plaintiff's fall and injury. The haste in movement which the passengers were invited to make, without any warning of the danger which might be occasioned by the vibration or rebounding of the car, the darkness, and the absence of any platform to step onto, were circumstances which permitted the jury to find that the injury of the plaintiff was attributable to the negligence of the defendant, and that the plaintiff was free from the imputation of contributory negligence.

The plaintiff's husband died November 12, 1893. There was some evidence given by the plaintiff to the effect that since her husband's death she had paid out something for help, the outside figure of which was five dollars per week. No such matter was alleged in the complaint. In making objection to the introduction of the evidence, the defendant's counsel did not specify the want of allegation in the complaint as a ground for it, or anything to that effect. Hence his objection on that ground is not available as error. But, as there is some doubt about the sufficiency of the evidence to support a recovery for the moneys paid out by the plaintiff for help and assistance at her home, defendant's exception taken to the submission of that matter to the jury is entitled to such consideration as to render it prudent to exclude from the recovery the amount which the jury could have allowed for such cause. But, as the question would have been obviated if the attention of the court had been called to the fact that no such claim was within the allegations of the complaint, the plaintiff should have costs if she consents to the deduction and consequent modification. The trial was had October 9, 1896, two years and about eleven months after the husband's death.

The judgment and order should be reversed, and a new trial granted, costs to abide the event, unless the plaintiff stipulates to deduct from the recovery, as of the time of the verdict, $755, and in that event the judgment be so modified, and, as modified, affirmed, with costs to the plaintiff. All concur.